**SIGNED THIS: February 2, 2015**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 12-70904 |
| JAMES C. FLAUGHER, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEFFREY D. RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Adversary No. 14-7006 |
| ) | |
| JAMES C. FLAUGHER, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

-1-

This matter is before the Court for decision after trial of a complaint by the Chapter 7 Trustee, Jeffrey D. Richardson, to revoke the discharge of the Debtor, James C. Flaugher. The Trustee alleges that the Debtor received proceeds from an EEOC action in the amount of $150,000, failed to report receipt of the proceeds to the Trustee, and spent almost all of the money before the Trustee learned it had been received. The Debtor contends that, because he expected only a modest amount of claims to be filed in his case, he was free to spend most or all of the proceeds, even before the claims bar date had run. For the reasons set forth below, the Debtor's discharge will be revoked.

## I. Factual and Procedural History

The facts of this case are largely undisputed. The Trustee requested the Debtor to admit facts prior to the trial, and the Debtor did so.

James C. Flaugher ("Debtor") filed his voluntary petition under Chapter 7 on April 17, 2012. Jeffrey D. Richardson was appointed Chapter 7 Trustee ("Trustee").

On his Schedule B filed contemporaneously with his petition, the Debtor disclosed an interest in a "Discrimination Lawsuit/Bodine" with a value of "0.00." At the Debtor's first meeting of creditors in May 2012, the Debtor confirmed that he had a case pending before the U.S. Equal Employment Opportunity Commission ("EEOC") against his former employer, Bodine Services of Decatur. A transcript of the meeting discloses that the Trustee advised the Debtor that the EEOC action was an asset of the bankruptcy estate and that the Debtor needed

to "check very closely" with his attorney before doing anything with any proceeds received from the EEOC action.

The docket discloses that, in June 2012, the Trustee filed a motion seeking to compel the Debtor to turn over information regarding his pending EEOC case. The Trustee complained in his motion that the Debtor had failed to provide documents regarding the case that he had been instructed to provide at the creditors meeting. The Trustee withdrew his motion after the Debtor delivered the information. In November 2012, the Trustee requested that the Debtor be required to appear for an examination under Rule 2004. Fed. R. Bankr. P. 2004. The Trustee alleged that promises by the Debtor and his attorney to provide documentation regarding the EEOC case had gone unfulfilled. The Debtor was ordered to appear for the examination.

In October 2013, at the request of the Trustee, the Debtor and his attorney met with the Trustee and informed him that the Debtor had been awarded $150,000 in the EEOC action but had not yet received any funds. The Trustee directed the Debtor to keep him informed as to the progress of the matter.

On or about November 22, 2013, the Debtor received a check in the amount of $150,000 from Bodine Services. The Debtor cashed the check on November 26, 2013, without the permission or knowledge of the Trustee. At no time after his receipt of the check did the Debtor voluntarily inform the Trustee or his own attorney that he had received and cashed the check.

On February 3, 2014, the Trustee contacted Bodine Services to inquire as to the status of payment of the Debtor's claim. Bodine Services provided the

Trustee with a copy of the cancelled check for $150,000 showing that the Debtor had received the payment several months earlier. The Trustee immediately advised the Debtor's attorney that the funds were to be turned over to him. Shortly thereafter, the Trustee received a check for $15,000 from the Debtor. The Debtor admits that most of the funds had been spent before the Trustee learned that the payment had been received. Over $80,000 of the money was spent within a week of when the check was received.

　　Because the Debtor had already received his discharge, the Trustee filed a complaint to revoke that discharge based on the Debtor's failure to turn over the EEOC proceeds. The Debtor answered the complaint admitting all relevant facts. He also affirmatively asserted that he understood from his meeting with the Trustee a month or so before he received the check that he would only have to pay the Trustee the amount necessary to pay claims and was otherwise free to spend whatever he received. He claimed that, because the $15,000 he paid the Trustee was enough to pay all claims on file and the costs of administration, no one was harmed by his failure to timely disclose and turn over the funds.

　　The Debtor was the only witness called at the trial on the Trustee's complaint. The Debtor admitted that he never told either his own attorney or the Trustee that the check had been received. He also admitted that, although he knew a claims bar date had been set, he never checked the amount of claims which had been filed before spending most of the proceeds. He acknowledged that, at the time he filed this case, he owed priority debts to the Internal Revenue Service ("IRS") in the amount of $62,000 and to his ex-wife for child support in the

amount of approximately $50,000, and owed about $50,000 in unsecured debt. Although the Debtor borrowed funds from his mother-in-law to pay at least part of the child support he owed, the IRS debt remains unpaid, as does all of his unsecured debt. The Debtor said that, despite knowing that the claims bar date would not run until the end of January 2014, he spent most of the funds before then. He asserted that, if more claims had been filed, he could have mortgaged his home and borrowed funds to deliver to the Trustee to pay those claims.

Both parties submitted argument at the close of the trial. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. Determining a debtor's entitlement to a discharge is a core proceeding. *See* 28 U.S.C. §157(b)(2)(J).

## III. Legal Analysis

The prerequisites for revocation of a debtor's discharge are set forth in 11 U.S.C. §727(d)(2), which provides, in pertinent part, as follows:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if —
> . . . .
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender

such property to the trustee[.]

11 U.S.C. §727(d)(2).

"The Bankruptcy Code places strict limits on a court's authority to revoke a discharge." *Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005). "Revocation of a discharge is a harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 603 (Bankr. N.D. Ill. 1996). Hence, a complaint seeking revocation of a discharge will be strictly construed against the complainant and in favor of the debtor. *Id.*; *Olsen v. Reese (In re Reese)*, 203 B.R. 425, 430 (Bankr. N.D. Ill. 1997). "However, §727(d) requires the court to revoke a debtor's discharge if the debtor obtained the discharge through fraud, acquired and concealed property of the estate, or refused to obey a court order." *Rezin v. Barr (In re Barr)*, 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997).

To prevail in his action to revoke the Debtor's discharge, the Trustee must prove that the Debtor acquired property of the estate and then knowingly and fraudulently failed either to report the acquisition or to deliver the property to the Trustee. *See In re Yonikus*, 974 F.2d 901, 904-05 (7th Cir. 1992); *Richardson v. Schoemperlen (In re Schoemperlen)*, 332 B.R. 179, 181 (Bankr. C.D. Ill. 2005). The Trustee must prove each element of his cause of action by a preponderance of the evidence. *Kaliana*, 202 B.R. at 604.

The Debtor admits that the funds he received from Bodine Services were

property of the estate and should have been turned over to the Trustee. Thus, the first element of the Trustee's proof is satisfied. The Debtor also admits that he did not voluntarily disclose the receipt of the funds and that he has failed to deliver or surrender the bulk of the funds to the Trustee. He claims that, despite these admissions, his discharge should not be revoked because he did not act "knowingly and fraudulently" when he failed to disclose and turn over the money.

"Knowingly" is synonymous with terms such as "willful," "voluntary," and "deliberate." *Meyer v. Rigdon*, 36 F.3d 1375, 1384 (7th Cir. 1994) (citing Black's Law Dictionary 1599 (6th ed. 1990)). An act which is done "knowingly" is not one that is done accidentally, involuntarily, or negligently. *Id.*

Here, the Debtor admits that he had been instructed by the Trustee at the first meeting of creditors not to spend any funds received from the EEOC action and to notify his own attorney when the money was received. He admits that he knew the money had to be used to pay claims and that he never checked to see what claims had been filed before he spent most of the money. He received the Bodine Services check, deposited it into his bank account, and then spent over $135,000 of the funds without ever alerting his own attorney or the Trustee that the money had arrived. He knew the Trustee was waiting to hear from him about the money when it was received. Nothing about his failure to call his own attorney or the Trustee or his spending of the money was accidental or involuntary. His acts can only be characterized as deliberate and voluntary, and therefore

−7−

"knowing." The Trustee has met his burden to prove that the Debtor acted "knowingly."

To understand what acting "fraudulently" or with "fraudulent intent" means, reference to the definition of "fraud" is instructive. Broadly defined, fraud is "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (citing 4 Collier on Bankruptcy ¶ 523.08[1][e], p. 523-45 (15th ed. 2000).

The Debtor claims that his actions were not designed to cheat or circumvent the Trustee from receiving possession of estate property. Instead, he says he got the impression during his October 2013 meeting with the Trustee that, because the amount of claims that would be filed would impact how much of his EEOC award he would get to keep, he was entitled to cash the check, not tell anyone about it, and spend the money. He testified that he extrapolated from the parties' discussion about the claims bar date that he no longer had a duty to inform the Trustee when the money arrived.

The Debtor's testimony was not credible. He was unable to point to anything specific that the Trustee said that might have misled him. To the contrary, he admitted that he knew claims were being filed and, when he received the check and started spending the money, he knew that the claims bar date was several months away. He admitted that the Trustee never told him that he no longer was

required to notify the Trustee or his attorney when he received the funds. He admitted that he was never released from his obligation to turn over the funds to the Trustee.

The Debtor's failure to report the receipt of the check and his quick spending of the bulk of the money was a design that he actively engaged in to circumvent the demands of the Trustee and to cheat the Trustee and his creditors. He had a duty to notify the Trustee when the check arrived, and he acted deceitfully in failing to honor that duty. His story now that he was under a mistaken belief that he could just keep the money and spend it is not credible. The Trustee filed multiple motions and made repeated demands on the Debtor for information about the EEOC action over the course of several years right up to just several weeks before the money was actually received. The Debtor's suggestion that, after all of that activity, the Trustee gave him the impression at their last meeting that he could take all of the money, spend it, and not notify or account to the Trustee, again, is not credible.

Fraudulent intent may be inferred from the course of conduct of a debtor. *Yonikus*, 974 F.2d at 905-06; *Reese*, 203 B.R. at 431-32. Here, the inference which may be drawn from the Debtor's failure to notify his own attorney and the Trustee that the check had been received is that the Debtor did not want either of them to know that he had the money. The inference which may be drawn from the Debtor's failure to timely turn over the funds to the Trustee is that he wanted

to spend the money for his own purposes rather than to meet his obligations in this case. The Trustee has met his burden of proof that the Debtor acted "fraudulently."

The Debtor argued at the close of the trial that, even if the Trustee had proven all of the elements of his cause of action, his discharge should not be revoked because none of his creditors had been harmed by his conduct. Only about $5600 in claims were filed by the bar date and, even after adding in the Trustee's commissions and expenses, the Debtor says that the $15,000 which he did turn over will be more than adequate to pay all claims and costs of administration. The Trustee disagreed with the Debtor's argument, asserting that the full amount necessary to pay all claims and costs cannot be determined until his final report is approved, and there is no authority to support the Debtor's "no harm, no foul" defense.

The Trustee is correct that the amount of claims on file right now is not fully determinative of the amount of claims that must be paid before this case is closed. Priority creditors who tardily file claims before the earlier of the date a trustee commences final distribution or the date that is ten days after a trustee has mailed the final report summary are entitled to have their allowed claims share in the distribution. 11 U.S.C. §726(a)(1). Based on the Debtor's testimony, he still owes the IRS a $62,000 priority debt. He therefore has at least one substantial creditor eligible to file a tardy claim and still be entitled to payment. Further, all

tardily-filed, allowed claims are entitled to payment before a trustee distributes surplus funds to a debtor. 11 U.S.C. §726(a)(3), (6). The Debtor had no right to take and spend what he alone projected to be his surplus before the Trustee was ready to distribute the surplus to him. Because, under the circumstances of this case, all time periods for creditors to file claims and share in a distribution have not yet passed, it is too early to determine whether creditors will be directly injured by the Debtor's conduct.

More importantly, the Trustee is correct that the absence of damage is not a factor to be considered in assessing whether the Debtor's discharge should be revoked. The Debtor knowingly and fraudulently took possession of the EEOC award and failed both to notify the Trustee that the money had been received and to turn over the funds as he had been directed to do. The fact that the Debtor ultimately turned over a small fraction of what he was required to and then only after the Trustee had tracked down the information about the Bodine Services payment on his own is, quite simply, "too little, too late." "A debtor seeking the benefit of a discharge pays a price. That price is the performance of certain duties, such as cooperation with the Trustee." *Reese*, 203 B.R. at 432. The Debtor's belated, partial compliance with his duty to turn over estate property to the Trustee does not cure his earlier failures. *See Schoemperlen*, 332 B.R. at 182. His discharge must be revoked.

## IV. Conclusion

The Trustee has met his burden of proof. The Debtor knowingly and fraudulently took possession of the EEOC award proceeds and failed both to notify the Trustee that the funds had arrived and to turn the funds over to the Trustee as required. Because of this conduct, the Debtor's discharge will be revoked.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###